# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOSE PEREZ, ALFREDO SANTOS, and
DOUGLAS RICHEY, on behalf of themselves
and others similarly situated,**

**Plaintiffs,**

**-vs-**                                                                    **Case No.  6:17-cv-1092-Orl-41GJK**

**OWL, INC.,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR ISSUANCE OF NOTICE PURSUANT TO § 216(b) OF THE FLSA** (Doc. No. 29) |
| **FILED:** | **August 17, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** (Doc. No. 48) |
| **FILED:** | **September 27, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

I.   **BACKGROUND.**

On June 15, 2017, Plaintiffs Jose Perez, Alfredo Santos, and Douglas Richey (collectively, "Plaintiffs") filed a Class and Collective Action Complaint (the "Complaint"). Doc. No. 1. Plaintiffs allege that they worked as drivers for Defendant Owl, Inc., and that they routinely worked more than forty hours a week, but were not paid overtime in violation of the Fair Labor Standards Act ("FLSA"). *Id.* at ¶ 1. They also allege that Defendant "breached its contracts with Plaintiffs and other drivers by failing to pay them at the applicable prevailing wage rate for all hours worked." *Id.* at ¶ 3. Plaintiffs assert Count I under the FLSA and label it a "Collective Action," and Count II as Breach of Contract and label it a "Rule 23 Class Action." *Id.* at 9-11. Plaintiffs bring their claims on behalf of themselves and other "similarly situated individuals, namely, all other persons who have worked for [Defendant] as drivers transporting patients." *Id.* at ¶ 11.

Defendant is a transportation company whose largest client is the United States Department of Veterans Affairs (the "VA"). Doc. No. 40-1 at ¶¶ 3, 6. Defendant provides transportation services to specific VA hospitals and facilities, including locations in Orlando, Daytona Beach, Viera Beach, Florida; Atlanta, Georgia; Raleigh and Durham, North Carolina; Kansas City, Missouri; and Richmond, Norfolk, and Hampton, Virginia. *Id.* at ¶ 7; Doc. No. 29-4 at ¶¶ 2, 12, 15; Doc. No. 29-6 at ¶ 3. According to the declaration of Defendant's Chief Executive Officer and founder, Laster Walker, each location is covered by a separate contract with the VA, and the contracts are governed by the Service Contract Act (the "SCA"), along with state and federal laws. Doc. No. 40-1 at ¶ 7. The contracts "incorporate the U.S. Department of Labor's [(the "DOL")] wage determinations unique to each city or region." *Id.* Walker avers that

2

on the rare occasions when hourly-paid drivers work over forty hours in one week, they are paid one-and-a-half times their regular rate for those hours. *Id.* at ¶ 12. He also states, "While supervisors may work more than forty (40) hours in a workweek, they would then work a reduced schedule the following week. It is not accurate to say that supervisors work more than forty (40) hours per week, every week." *Id.* at ¶ 14.

Plaintiffs are and were drivers transporting patients for Defendant. Doc. No. 29-1 at ¶ 2; Doc. No. 29-2 at ¶ 2. Defendant's employees go through a ninety-day probationary period. Doc. No. 40-1 at ¶ 10. After the probationary period, "they may remain hourly drivers or [are] promoted to a salaried, supervisory position." *Id.* In Florida, Defendant serves a large geographic area where most patients prefer morning appointments, leaving a gap between morning and afternoon "rushes." *Id.* at ¶ 13. Walker asserts that the salaried "road supervisor" position was created "to give more senior employees flexibility in dealing with these surges and predictability in their weekly earnings." *Id.* Walker states that thirty to forty percent of the Florida employees are "supervisors," while "most other locations around the country have no more than 3 to 5 supervisors total." *Id.* at ¶ 15.

After periods as hourly employees, Plaintiffs Santos and Richey were switched to the road supervisor position and given an annual salary of $26,400. Doc. No. 29-1 at ¶¶ 3, 4; Doc. No. 29-2 at ¶¶ 3, 4. They state that their duties were the same before and after being changed to road supervisors. Doc. No. 29-1 at ¶ 5; Doc. No. 29-2 at ¶ 5. Those duties consisted of transporting VA patients in a van modified to accommodate a stretcher or wheelchair. Doc. No. 29-1 at ¶¶ 7, 8; Doc. No. 29-2 at ¶¶ 7, 8. If the patients require it, Santos and Richey lift them "out of bed and onto a stretcher, tie down the wheelchair or stretcher, and secure the patient's

3

oxygen tank or other medical equipment." Doc. No. 29-1 at ¶ 9; Doc. No. 29-2 at ¶ 9. Santos and Richey are "required to clean out the van if a patient vomits or goes to the bathroom in it." Doc. No. 29-1 at ¶ 10; Doc. No. 29-2 at ¶ 10. Defendant required Santos and Richey "to be trained in CPR and how to transport the patients." Doc. No. 29-1 at ¶ 11; Doc. No. 29-2 at ¶ 11.

Santos states that he worked as a dispatcher for a period of time for Defendant, and one of his duties was to log the drivers' hours. Doc. No. 29-1 at ¶¶ 12-13. Due to this work, he learned the hours and duties of Defendant's other drivers in Orlando. *Id.* at ¶ 13. The Orlando facility staffed about fifteen drivers each day, and before August 2016, they were all road supervisors. *Id.* He states that currently eight out of the fifteen drivers are road supervisors. *Id.*

Santos and Richey aver that they were required to work more than forty hours a week, but were not paid overtime. *Id.* at ¶¶ 5, 6; Doc. No. 29-2 at ¶¶ 5, 6. Santos also states that the hourly drivers do not work overtime. Doc. No. 29-1 at ¶ 13.

Over thirty of Defendant's drivers have filed notices of opting in to this lawsuit. Doc. No. 11; Doc. No. 26; Doc. No. 28; Doc. No. 30; Doc. No. 33; Doc. No. 42; Doc. No. 59; Doc. No. 75. They include drivers who worked in the Florida, North Carolina, and Kansas City facilities. Doc. No. 29-3 at ¶ 3; Doc. No. 29-4 at ¶ 2; Doc. No. 29-6 at ¶ 3. Opt-in Plaintiff Seaira Bright originally worked out of the Durham, North Carolina facility.[1] Doc. No. 29-4 at ¶ 2. After five months, she was labeled a road supervisor and received a salary of $550 per week. *Id.* at ¶¶ 4, 6. Although she performed some office work, the other road supervisors did not. *Id.* at ¶ 11. Through this office work, she learned that Defendant labels many of its Virginia drivers as road supervisors and pays them a $26,400 salary with no overtime. *Id.* at ¶ 16.

---

[1] On January 16, 2018, Plaintiffs filed a notice that Bright accepted Defendant's offer of judgment. Doc. No. 74.

Opt-in Plaintiff Jerel Bazemore also worked out of the Durham facility.[2] Doc. No. 29-5 at ¶ 3. During his probationary period, he was paid hourly. *Id.* at ¶ 3. Defendant then labeled him a road supervisor and paid him a salary of $26,400. *Id.* at ¶ 4. He was switched back to an hourly employee for about eight months, during which he states that he worked overtime but was not paid for it. *Id.* at ¶ 6. He was then switched again to the salaried road supervisor position. *Id.* at ¶ 7.

Opt-in Plaintiff Jean Wick worked out of the Kansas City facility. Doc. No. 29-6 at ¶ 3. She was paid hourly and states that she was not paid overtime. *Id.* at ¶¶ 3, 5. She states, "There were approximately 18 other drivers working for [Defendant] in Kansas City who were paid on an hourly basis and they worked more than 40 hours . . . per week without overtime pay." *Id.* at ¶ 6.

Opt-in Plaintiff Hans Giesler worked out of Defendant's Kansas City, Missouri facility, also. Doc. No. 52-6 at ¶ 3. Like Bazemore, Santos, and Richey, Giesler was paid hourly during his probationary period, and then switched to a salaried road supervisor position, being paid $26,400 annually. *Id.* at ¶¶ 3, 4. He states that most of the drivers in the Kansas City facility were paid per hour, worked overtime, and "were only paid a flat rate." *Id.* at ¶ 8.

Richey, Bright, Bazemore, and Giesler also state that Defendant "has a company-wide practice of depriving its hourly drivers of overtime pay by carrying over overtime hours from one week or pay period to next week or pay period." Doc. No. 52 at 2; Doc. No. 52-1 at ¶ 6; Doc. No. 52-4 at ¶ 4; Doc. No. 52-5 at ¶ 4; Doc. No. 52-6 at ¶ 16. "[I]f a driver worked overtime during a week, instead of paying the driver overtime, [Defendant] carried those overtime hours

---

[2] On January 16, 2018, Plaintiffs filed a notice that Bazemore accepted Defendant's offer of judgment. Doc. No. 74.

over to the next week or pay period. . . . Occasionally, the driver was not paid for those carry-over hours at all." Doc. No. 52-1 at ¶ 6.

On August 17, 2017, Plaintiffs filed their "Motion for Issuance of Notice Pursuant to § 216(b) of the FLSA" (the "Motion for Issuance of Notice"). Doc. No. 29. They ask the Court to "authorize notice to be issued to all similarly situated employees so that they may opt in to join this lawsuit." *Id.* at 2. They seek this relief under Count I, their claim for violations of the FLSA. *Id.* On September 13, 2017, Defendant filed its "Brief in Opposition to Plaintiffs' Motion for Issuance of Notice Under 29 U.S.C. §216(b)." Doc. No. 40. On October 4, 2017, with the Court's authorization, Plaintiffs filed their reply to Defendant's response. Doc. No. 47; Doc. No. 52.

On September 27, 2017, Plaintiffs filed their "Motion for Class Certification." Doc. No. 48. They seek class certification as to Count II of their Complaint for breach of contract.[3] *Id.* at 2. On October 11, 2017, Defendant filed its "Opposition to Plaintiffs' Motion for Rule 23 Class Certification." Doc. No. 54. Once again pursuant to Court authorization, on October 20, 2017, Plaintiffs filed their "Reply in Support of Motion for Class Certification." Doc. No. 56; Doc. No. 60.

On November 3, 2017, Plaintiff filed a "Supplement in Support of Plaintiffs' Motion for Issuance of Notice Pursuant to § 216(B) of the FLSA." Doc. No. 61. The Court denied Defendant's motion to strike the Supplement, but permitted Defendant to file a response to it. Doc. No. 63; Doc. No. 67. On December 5, 2017, Defendant filed its "Response to Plaintiffs' Supplemental Brief." Doc. No. 68.

---

[3] Currently pending before the Court is Defendant's Partial Motion to Dismiss, which asks that the Court dismiss the breach of contract claim (the "Motion to Dismiss"). Doc. No. 17.

The Motion for Issuance of Notice and the Motion for Class Certification are now ready for review. Plaintiffs ask for oral argument on their Motion for Issuance of Notice. Doc. No. 29 at 18. Oral argument would not assist the Court in its determination of the issues; therefore, the request is denied.

## II.   MOTION FOR ISSUANCE OF NOTICE.

In the Motion for Issuance of Notice, Plaintiffs seek relief under 29 U.S.C. § 216(b) of the FLSA and ask the Court to do the following:

> [O]rder that notice of this case be issued to all individuals who were employed as drivers by [Defendant] who did not receive overtime pay despite working more than 40 hours a week, including drivers [Defendant] labeled as "road supervisors," since June 15, 2014. Furthermore, Plaintiffs request that the Court approve the proposed Notice and Opt-in forms . . . attached hereto as Exhibits G and H; order that notice be issued by regular and electronic mail; set an opt-in deadline of 90 days after the notices are issued; allow for a reminder notice to be sent out 45 days into the opt-in period; and enter the Proposed Order attached as Ex. M.

Doc. No. 29 at 17-18.

### A.   Legal Standard

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage; and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Motion for Issuance of Notice falls under the notice stage. The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.*

At the notice stage, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Anderson v. Cagle's, Inc.*,

7

488 F.3d 945, 952 (11th Cir. 2007)). The standard for determining similarity at the notice stage is fairly lenient, not particularly stringent, and not heavy. *Id.* at 1261.

In addition to determining whether there are similarly situated employees to the plaintiff, the court must also "satisfy itself that there are other employees of the department-employer who desire to 'opt-in' . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

### B.      Other employees desiring to opt in

More than thirty people consented to join this action as opt-in plaintiffs. Doc. No. 11; Doc. No. 26; Doc. No. 28; Doc. No. 30; Doc. No. 33; Doc. No. 42; Doc. No. 59; Doc. No. 75. Defendant does not challenge Plaintiffs' ability to satisfy the requirement that there are other employees that wish to opt in to the FLSA action. Doc. No. 40. Accordingly, it is recommended that the Court find that Plaintiffs sufficiently demonstrate the requirement for issuance of notice that there are other employees that wish to opt in to the FLSA action. *See Robbins-Pagel v. Wm. F. Puckett, Inc.*, No. 6:05-CV-1582-ORL-31DAB, 2006 WL 3393706, at *2 (M.D. Fla. Nov. 22, 2006) (finding sufficient evidence to establish a reasonable basis to believe that there are similarly situated individuals who may be interested in joining the action, if given notice, when plaintiff submitted the affidavit of herself and two others interested in joining the action); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (finding requirement met with evidence of one other co-worker wishing to join suit).

8

C.     Similarity

Plaintiffs argue that their positions are similarly situated to the putative class members because Defendant "has a widespread practice of not paying its drivers overtime, including the drivers [Defendant] labels as 'road supervisors', despite their working more than 40 [hours] per week." Doc. No. 29 at 9. They also contend that road supervisors are similar to the drivers that are paid hourly because they "perform the same job – transporting VA patients." Doc. No. 52 at 5.

"Defendant agrees that a collective action encompassing the 'road supervisors' employed at Defendant's Florida sites during the limitations period is appropriate . . . ." Doc. No. 40 at 1. Defendant argues, however, that Plaintiffs' proposed class is "too broad, ill-defined, not supported by the Plaintiffs' declarations and pleadings, and ultimately unmanageable as a collective action." *Id.* Defendant points to allegedly inconsistent statements in the supporting declarations, argue that Plaintiffs do not "allege that Defendant had any uniform or nationwide set of policies and practices that resulted in alleged misclassification or underpayment of wages[,]" and that payroll records show that hourly workers were paid overtime. *Id.* at 2.

The Court makes the determination of whether notice should be sent to the putative class members primarily by reviewing the pleadings and affidavits. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). "[T]he plaintiff must offer 'detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.'" *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *3 (M.D. Fla. Dec. 12, 2012) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996)). Plaintiffs must be "'similarly situated' with respect to their job requirements and with regard to

9

their pay provisions . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d at 1567–68. Similar does not equal identical. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

Defendant first argues that Plaintiffs do not allege a uniform policy or practice that violated their rights under the FLSA. Doc. No. 40 at 9. Plaintiffs allege that Defendant "has a company-wide practice of requiring drivers it labels as 'road supervisors' to work more than 40 hours a week without overtime pay." Doc. No. 52 at 1. In support, Plaintiffs submitted the following declarations:

- o Plaintiffs Santos and Richey, stating that they worked in Orlando as salaried road supervisors and were not paid overtime, Doc. No. 29-1 at ¶¶ 2, 4-6; Doc. No. 29-2 at ¶¶ 2, 4-6;

- o Bright, stating that she worked out of the Durham, North Carolina facility, as a salaried road supervisor and was not paid overtime, Doc. No. 29-4 at ¶¶ 2, 4-6; and

- o Bazemore, stating that he worked out of the Durham facility as a salaried "road supervisor" and was not paid overtime, Doc. No. 29-5 at ¶¶ 2, 4-5, 7.

Bright also states in her declaration that many drivers in the Virginia facility were labeled "road supervisors," paid a salary, and not paid overtime, Doc. No. 29-4 at ¶ 16, and Bazemore adds that approximately eight to ten other drivers in the Durham facility were in his same position. Doc. No. 29-5 at ¶ 8.

Plaintiffs additionally state that Defendant "has a company-wide practice of failing to pay drivers it compensates on an hourly basis overtime for all of their overtime hours." Doc. No. 52 at 2. In support of this assertion, Plaintiffs rely on the declaration of Bazemore, in which he

states that when he worked as an hourly driver, he did not receive overtime, Doc. No. 29-5 at ¶ 6, and Wick's declaration, in which she states that she worked as a driver in the Kansas City facility, was paid $11 per hour, and was not paid overtime, Doc. No. 29-6 at ¶¶ 2, 5. Plaintiffs assert in their Reply to Defendant's response to the Motion for Issuance of Notice that Defendant "has a company-wide practice of depriving its hourly drivers of overtime pay by carrying over overtime hours from one week or pay period to [the] next week or pay period." Doc. No. 52 at 2. Plaintiffs cite the supplemental declarations of Richey, Bright, Bazemore, and the declaration of Giesler as support, which all state that Defendant had this practice. Doc. No. 52-1 at ¶ 6; Doc. No. 52-4 at ¶ 4; Doc. No. 52-5 at ¶ 4; Doc. No. 52-6 at ¶ 16.

Defendant argues "that its policies and practices vary widely from state to state, depending on factors as varied as geography and the nature of services provided by contract to each VA hospital." Doc. No. 40 at 10. As an example, Defendant describes the differences between the Orlando and Atlanta facilities, *id.*, but does not explain how those differences negate Plaintiffs' allegations of Defendant's policies of naming drivers "road supervisors" and paying them a salary or the policy of carrying over overtime hours from one week to the next to avoid paying overtime. Plaintiffs thus present evidence of uniform policies or practices that violated their FLSA rights.

Defendant's second argument is that Plaintiffs worked in different locations, subject to different rules. *Id.* at 10. In support, Defendants state, "Plaintiffs in the instant case similarly purport to include employees who were salaried road supervisors, hourly drivers, payroll and administrative office workers, and dispatchers, a diversity of positions and pay systems that defy wholesale treatment." *Id.* at 11.

Defendant mischaracterizes Plaintiffs' request. Plaintiffs ask that the Court allow notice to be sent to "all individuals who were employed as drivers by [Defendant] who did not receive overtime pay despite working more than 40 hours a week, including drivers [Defendant] labeled as 'road supervisors,' since June 15, 2014." Doc. No. 29 at 17. Plaintiffs seek to notify Defendant's employees employed as drivers, regardless of the other tasks they do or did for Defendant. Defendant submits no evidence that it has employees that act as drivers incidental to their main duties or that it is not clear which of its employees should receive the notice. As noted above, "similar" does not mean "identical." *Hipp*, 252 F.3d at 1217. Additionally, Defendant does not explain how employees working at different locations were subject to different rules. Therefore, it is recommended that the Court reject these arguments.

Defendant's final argument is that salaried and hourly potential plaintiffs are not similarly situated. Doc. No. 40 at 11. Defendant contends that the hourly drivers present straightforward claims, but the salaried drivers' claims will need to be examined in light of their "job duties to decide whether they were correctly classified as exempt . . . , and then whether those duties qualified them for the exemption. If it is determined that they were improperly classified, their hours may have to be reconstructed because salaried employees typically do not record their hours worked."[4] *Id.* at 11-12. Plaintiffs argue that because the road supervisors and the hourly drivers perform the same job of transporting VA patients and "are subject to a uniform policy of failing to pay overtime[, they] are similarly situated." Doc. No. 52 at 5.

Plaintiffs fail to cite any cases certifying notice to a class of employees that include both hourly and salaried employees. The Eleventh Circuit states that "similarly situated" includes both

---

[4] Defendant does not submit any evidence that the road supervisors' hours were not recorded. In contrast, Santos states in his declaration that one of his duties as a dispatcher was to log the drivers' hours. Doc. No. 29-1 at ¶ 13.

the job requirements and the pay provisions. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d at 1567–68. Hourly and salaried are not similar pay provisions. Plaintiffs Perez, Santos, and Richey all were salaried. Doc. No. 29-1 at ¶¶ 2, 4-6; Doc. No. 29-2 at ¶¶ 2, 4-6; Doc. No. 50-1 at 1. Thus, their pay provisions are not similar to the drivers employed by Defendant and paid an hourly rate, and Plaintiffs fail to demonstrate that they are similarly situated to the proposed class consisting of all of Defendant's drivers that transported patients. Accordingly, it is recommended that the Court deny the Motion for Issuance of Notice based on a lack of similarity.

## III.   MOTION FOR CLASS CERTIFICATION.

Plaintiffs move for class certification of Count II, their breach of contract claim, under Federal Rule of Civil Procedure 23, "consisting of all individuals who transported VA patients for [Defendant] at any time since June 15, 2012 . . . ." Doc. No. 48 at 2.

### A.   Legal Standard

Rule 23(a) states the following:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). These requirements are "numerosity,

commonality, typicality, and adequacy of representation." *Id.* If those four prerequisites are satisfied, the district court must consider the relevant Rule 23(b) requirements, *id.*, which in this case Plaintiffs assert under subsection (3) of Rule 23(b). Doc. No. 48 at 16-20. Rule 23(b)(3) allows certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[D]ecisions to certify a class rest on a 'rigorous analysis' of the requirements of Rule 23." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d at 1266). "The party seeking class certification has a burden of proof, not a burden of pleading." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). Compliance with Rule 23 must be affirmatively demonstrated by proving that the requirements are, in fact, met. *Id.*

### B.    Defendant's Arguments

Rather than addressing the Rule 23 requirements for class certification, Defendant argues that the Motion for Class Certification should be denied because "this [C]ourt lacks authority to decide Plaintiffs' claims." Doc. No. 54 at 2. Defendant asserts that "it is irrelevant whether Plaintiffs can demonstrate commonality or typicality or any of the other Rule 23 criteria." *Id.* Defendant argues that there is no private right of action for violations of the SCA, which it contends Plaintiffs' breach of contract claim is based upon, and therefore the Motion for Class Certification should be denied. *Id.* at 1, 3-6, 9. Defendant also asserts that the Secretary of Labor has the sole authority to determine wage rates and proper worker classifications under the SCA.

14

*Id.* at 6-7. Finally, Defendant contests Plaintiffs' argument "that their case is 'nearly identical' to class actions brought under the H-2A and H-2B regulations . . . ." *Id.* at 7-8.

At the class certification stage, "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, (2013). If the answer to the merits question "is needed to ensure that the *questions* of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses" then the court should address the merits question. *Id.* at 467 (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original). At the class certification stage, under Rule 23(b)(3), plaintiffs "need not, at that threshold, prove that the predominating question will be answered in their favor." *Id.* at 468. If there is a concern that the proposed class has a "fatal similarity," such as a failure to prove an essential element, then that should be addressed on motions for summary judgment, not motions for class certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).

In the unpublished opinion *Cox v. Community Loans of America Inc.*, 625 F. App'x 453, 455 (11th Cir. 2015), the Eleventh Circuit considered whether there was a private right of action under a federal statute at the class certification stage, stating that the issue was inextricably intertwined with whether there were common issues of law. That court stated that "if there is no implied private right of action for violations of the [statute], then there are no common issues of law appropriate for adjudication on a class-wide basis." *Id. Cox*, as an unpublished opinion, is not binding. 11th Cir. R. 36-2. Further, this case is distinguishable from *Cox*, as Defendant's Motion to Dismiss Count II addresses the same issues raised in its response to the Motion for

Class Certification and is currently pending before the District Judge. A recommendation from the undersigned regarding these issues is inappropriate, as the District Judge has not referred the Motion to Dismiss for a report and recommendation. Thus, the undersigned follows the binding precedent in *Amgen* and *Tyson* that a question on the merits of the lawsuit that applies to all members of the proposed class should not be decided on a motion for class certification. As Defendant's arguments opposing the Motion for Class Certification apply to all members of the proposed class, they are irrelevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

### C.      Class Certification Requirements

Although Defendant does not contest whether Plaintiffs meet the class certification requirements under Rule 23, the Court must conduct a "rigorous analysis" of whether Plaintiffs satisfy those requirements. *Sacred Heart Health Sys.*, 601 F.3d at 1169.

#### 1.      Standing

To establish standing under Article III, a plaintiff must show that he suffered an injury-in-fact, that there is a causal connection between the injury-in-fact and the defendant's action, and that it is likely that a favorable decision would redress the injury. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1273–74 (11th Cir. 2001). "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

16

Plaintiffs submit answers to court interrogatories and declarations regarding the wages Defendant paid them. Doc. No. 48-1 at ¶¶ 3-6; Doc. No. 48-2 at ¶¶ 3-6; Doc. No. 50-1 at 1-2. In the Complaint, they allege that these wages constitute a breach of contract because they are below the prevailing wage as determined by the DOL and required under their contracts with Defendant. Doc. No. 1 at 10-11. Plaintiffs thus satisfy the injury-in-fact (failure to pay contracted wages), causation (Defendant failed to pay the contracted wages), and redressability (prevailing on the breach of contract claim would result in an award of damages) requirements of individual standing. The claims Plaintiffs wish to raise on behalf of the proposed class are identical: they suffered the same alleged injury and possess the same interests as the proposed class. Thus, it is recommended that the Court find that Plaintiffs satisfy the standing requirement.

2.   Numerosity

The first requirement Plaintiffs must satisfy under Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). Plaintiff submits evidence that the proposed class consists of at least 153 drivers in eleven states. Doc. No. 48-1 at ¶ 13; Doc. No. 48-4 at ¶ 6; Doc. No. 48-5 at ¶ 4; Doc. No. 48-7 at ¶¶ 8-9; Doc. No. 48-8 at ¶¶ 13, 14. This is sufficient to satisfy the numerosity requirement. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (district court did not abuse its discretion in finding that numerosity requirement was met where thirty-one individual class members from wide geographical area were identified).

3.   Commonality

The second requirement Plaintiffs must satisfy under Rule 23(a) is that "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). "Commonality

requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Plaintiffs argue that they meet the commonality requirement because the common issues are whether Defendant's drivers are owed the prevailing rate, and if so, what that rate is. Doc. No. 48 at 9. They state that they submitted evidence that Defendant does not pay its drivers the prevailing rate required by the DOL as a matter of policy. *Id.* at 10. Plaintiffs contend that Defendant is required by the SCA to pay the prevailing wage set by the DOL. *Id.* at 9. Plaintiffs argue that the SCA applies because Defendant's "largest client is the VA and . . . it primarily provides transportation services to VA hospitals and facilities." *Id.*

It is recommended that the Court find that the commonality requirement is satisfied. Walker states that Defendant's largest client is the VA and that it provides transportation services to the VA's hospitals and facilities and those contracts are governed by the SCA and incorporate the DOL's wage determinations. Doc. No. 48-5 at ¶¶ 6-7. Although Walker states that the DOL's wage determinations are unique to each city or region and that the types of services Defendant provides are different in Orlando as compared to Atlanta, *id.* at ¶¶ 7-8, this does not preclude a commonality finding. The potential class consists of Defendant's drivers, and Defendant admits the essential facts supporting Plaintiffs' claim for breach of contract—its largest client is the VA, it provides transportation services to the VA's hospitals and facilities, and those contracts are

governed by the SCA and incorporate the DOL's wage determinations.[5] *Id.* at ¶¶ 6-7. Plaintiffs' claim depends on the common contentions that Defendant's drivers are entitled to be paid a prevailing wage as determined by the DOL, that Defendant failed to so pay them, and that the failure constitutes a breach of contract. The commonality requirement is satisfied. *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 646 (M.D. Fla. 2012) (commonality requirement met where "common questions include whether Defendants failed to pay the contractual adverse effect wage rate . . . , whether Defendants deducted one hour from the lapsed recorded time for each worker for travel time, and whether Defendants did not fully reimburse workers for their pre-employment, post-employment, and subsistence expenses.").

### 4.   Typicality

The third requirement Plaintiffs must satisfy under Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). Typicality requires that the class representatives have the same interest and the same injury as the potential class members. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008). A sufficient nexus must exist between the class representatives' claims and the potential class members' claims. *Id.* There is a sufficient nexus if the class representatives' claims and the potential class members' claims arise from the same event, pattern, or practice and are based on the same theories. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Plaintiffs allege in Count II that Defendant breached the contract with its drivers by not paying them the prevailing wage as determined by the DOL. Doc. No. 1 at ¶¶ 58, 60, 62. Plaintiffs submitted declarations of Defendant's employees stating that Defendant would pay the

---

[5] The undersigned expresses no opinion on the merits of Plaintiffs' breach of contract claim.

drivers a salary that would not compensate them for overtime, even though they were required to work more than forty hours a week. Doc. No. 48-1 at ¶¶ 4, 5, 14; Doc. No. 48-2 at ¶¶ 4, 5; Doc. No. 48-3 at ¶¶ 4, 5. Plaintiffs also submit evidence that drivers that were paid hourly were not paid overtime. Doc. No. 48-4 at ¶ 4, 5. Plaintiffs argue that this results in Defendant failing to pay the prevailing wage as determined by the DOL, as it lowers the drivers' per-hour wage. Doc. No. 48 at 1-2. There is no indication that the class members' claims would not be based on these theories or alleged practices by Defendant. Thus, it is recommended that the Court find that the typicality requirement is satisfied.[6]

### 5.   Adequacy of Representation

The fourth and final requirement Plaintiffs must satisfy under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This fourth requirement involves two inquiries: are there substantial conflicts of interest between the representatives and the potential class members; and will the representatives adequately prosecute the class action? *Busby v. JRHBW Realty, Inc.*, 513 F.3d at 1323. A fundamental conflict going to the specific issues in controversy warrants denying class certification. *Valley Drug Pharm. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

It is recommended that the Court find that Plaintiffs fulfill both prongs of the adequacy requirement. There is no evidence of any substantial conflicts between Plaintiffs and the

---

[6] The finding that the commonality and typicality requirements are met does not conflict with the finding that the similarity requirement for issuance of notice under the FLSA is not met. Plaintiffs seek class certification under Count II, for breach of contract, which involves different elements than their claim for violations of the FLSA, under which they sought issuance of notice. Salaried drivers are not so dissimilar from the hourly-paid drivers in determining whether a breach of contract occurred so as to preclude class certification, and Defendant makes no argument that the two categories of drivers are dissimilar as to the breach of contract claim. If Plaintiffs are successful under Count II, the primary distinction between the claims of hourly versus salaried employees would be quantification of damages, which is already a somewhat individualized issue.

potential class members, and Plaintiffs' counsel state that they "litigated dozens of class action cases on behalf of employees in the service and delivery industries involving allegations of unpaid wages." Doc. No. 48 at 14.

6.    <u>Rule 23(b)(3) Requirements</u>

If Rule 23(a)'s four prerequisites are satisfied, the district court must consider the relevant Rule 23(b) requirements. *Vega v. T-Mobile USA, Inc.*, 564 F.3d at 1265. Plaintiffs rely on subsection (3) of Rule 23(b). Doc. No. 48 at 16-20. There are two inquiries under Rule 23(b)(3): "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

a.    Predominance

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The court must carefully scrutinize the relationship between common and individual questions in a case. *Tyson*

21

*Foods, Inc. v. Bouaphakeo*, 136 S. Ct. at 1045. An individual question requires evidence that is different from one class member to another, but a common question can be resolved by the same evidence for each class member or the issue can be proven by generalized, class-wide proof. *Id.* In reviewing predominance, the court determines whether the common issues are more prevalent or important than the individual issues. *Id.* If the central issues are common to the class and predominate, then the predominance inquiry is satisfied. *Id.*

Common issues predominate here. "[T]he core claims of all class members turn on whether [Defendant's] uniform failure to pay the prevailing wage constitutes a breach of contract." Doc. No. 48 at 17. Plaintiffs present evidence that Defendant's behavior was directed towards its drivers and was the same as to all of its drivers. Doc. No. 48-1 at ¶¶ 4, 5, 14; Doc. No. 48-2 at ¶¶ 4, 5; Doc. No. 48-3 at ¶¶ 4, 5; Doc. No. 48-5 at ¶¶ 6, 7, 10. Defendant has not countered this with any argument that common issues would not predominate. There is no indication that the class members' interests in individually controlling the prosecution of separate actions preclude a finding of commonality or that any litigation concerning the controversy has begun by class members. Although Plaintiffs' counsel filed "a formal charge with the U.S. Department of Labor alleging the misclassification of drivers and failure to pay the benefits provided for under the terms of [the SCA] and Executive Order 13658," Doc. No. 53-2 at ¶ 5, there has been no contention that this would result in a predominance of individual questions. Although individualized inquiries may be necessary regarding damages calculations, this does not preclude a finding of predominance. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) ("individualized damages calculations are insufficient to foreclose the possibility of class certification . . . ."). Having considered the potential class members' interests in

22

individually controlling the prosecution of separate actions and the extent and nature of any litigation concerning the controversy already begun by class members, it is recommended that the Court find that the predominance requirement under Rule 23(b)(3) is met.

b.     Superiority

The last requirement Plaintiffs must satisfy for class certification found in Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Having considered the desirability of concentrating the litigation of the claims in this Court and the likely difficulties in managing this particular class action, the undersigned concludes that a class action is superior to other available methods for adjudicating the breach of contract issue between Plaintiffs, potential class members, and Defendant. More than thirty people consented to join this action as opt-in plaintiffs. Doc. No. 11; Doc. No. 26; Doc. No. 28; Doc. No. 30; Doc. No. 33; Doc. No. 42; Doc. No. 59; Doc. No. 75. Plaintiffs are ably prosecuting this action, and it would result in judicial inefficiency for over one hundred of the same claims against Defendant to be prosecuted separately. There are no apparent difficulties in managing this case as a class action. Therefore, it is recommended that the Court find that Plaintiffs meet the superiority requirement under Rule 23(b)(3).

As Plaintiffs satisfy the requirements for class certification under Rule 23, it is recommended that the Court certify the class as "all individuals who were employed by [Defendant] as drivers transporting Veterans Administration patients at any time since June 15,

2012." Doc. No. 48 at 21.

**IV.**    **CONCLUSION**.

Accordingly, it is **RECOMMENDED** as follows:

1. That the Motion for Issuance of Notice (Doc. No. 29) be **DENIED**; and

2. That the Motion for Class Certification (Doc. No. 48) be **GRANTED**.

### NOTICE TO PARTIES

The parties have **ten calendar days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on February 20, 2018.


GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies to:
Counsel of Record
Unrepresented Parties