IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOSE PEREZ, ALFREDO SANTOS, and DOUGLAS RICHEY, on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs*,<br><br>    v.<br><br>OWL, INC., d/b/a/ OWL, INC. TRANSPORTATION,<br><br>      *Defendant*. | Civil Action File No.<br><br>6:17-cv-1092-ORL-41-GJK |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED
MOTION FOR ISSUANCE OF NOTICE UNDER 29 U.S.C. §216(b)**

Plaintiffs originally moved for conditional certification of a single, broadly-defined class of current and former drivers employed nationwide by Defendant from June 15, 2014, to the present. (Dkt. 29.) United States Magistrate Judge Gregory J. Kelly filed a Report and Recommendation (the "R&R), recommending that the Court deny Plaintiffs' Motion, finding that hourly and salaried Plaintiffs were not similarly situated and therefore could not pursue a collective action under 29 U.S.C. §216(b). (Dkt. 78 at 13.) Both parties filed objections to the R&R. (Dkt. 80, 81.) After a *de novo* review of the record, the District Court adopted the R&R in part and rejected it in part, directing Plaintiffs to submit a renewed Motion. (Dkt. 88.) Plaintiffs have filed a Renewed Motion for Issuance of Notice under 29 U.S.C. §216(b), which is the subject of this response in opposition. (Dkt. 90.)

Plaintiffs' Motion should be denied. Plaintiffs have corrected the most obvious errors that the Court brought to their attention by proposing two sub-classes, one consisting of current and former "road supervisors" paid on a salary basis and another consisting of drivers paid hourly.

However, the nationwide scope of the proposed classes, which the Court did not address, is still overbroad. It is Plaintiffs' burden to show that the proposed class members are similarly situated, not Defendant's to show that they are not. As Defendant argued in response to the previous motion, and which remains true today, Plaintiffs have failed to introduce any evidence of centralized decision-making that would be necessary to meet their admittedly light burden. Plaintiffs' Motion should be denied.

## BACKGROUND

In their renewed Motion, Plaintiffs ask the Court to certify and send nationwide notice to two sub-classes of Defendant's current and former employees: (1) salaried "road supervisors" whom Plaintiffs allege were denied overtime pay because they were misclassified as salaried, exempt employees under the Fair Labor Standards Act (FLSA), 29 U.S.C. §213(a)(1) *et seq*. and 29 C.F.R. Part 541; and (2) hourly drivers allegedly compensated for overtime hours only at their regular hourly rate, and not at one and one-half times that rate, for all hours over 40 in any work week, as required by 29 U.S.C. §207. (Dkt. 90.) While the Defendant agrees that a collective action encompassing these two sub-classes of current and former employees at Defendant's Florida sites during the limitations period is appropriate, the Court should deny the Plaintiffs' proposed *nationwide* scope of these classes because it is too broad, ill-defined, not supported by the Plaintiffs' declarations and pleadings, and ultimately unmanageable as a collective action.

Plaintiffs' burden on conditional certification is admittedly light, but their allegations fail to show that drivers and road supervisors in different states are similarly situated. The Magistrate Judge found that Plaintiffs had sufficiently alleged uniform practices, *see* (Dkt. 78 at 11), but failed to acknowledge that factual allegations in Plaintiffs' supporting declarations were inconsistent. Specifically, Plaintiffs at some locations made the conclusory assertion that they engaged in no

2

supervisory activities, yet listed office and administrative duties they claim they carried out in addition to, or instead of, driving. Plaintiffs employed at other locations alleged that they were hourly workers who were denied overtime, and others that they were salaried but misclassified. Most of those submitting declarations were employed in Florida, but a few also worked in North Carolina, and one (briefly) in Missouri. However, nowhere did Plaintiffs allege that Defendant had any uniform or nationwide set of policies and practices that resulted in alleged classwide misclassification or underpayment of wages.

Contradicting some Plaintiffs' allegations, payroll records show that some hourly workers were indeed paid overtime when they worked more than forty (40) hours, as some (not all) acknowledged. Again, Plaintiffs filed to make any allegation as to a uniform or nationwide practice to underpay overtime. Plaintiffs' Motion for notice should be denied as proposed. At most, the facts alleged would support certification of only a geographically limited class, consisting of (1) current and former "road supervisors" and (2) hourly drivers who worked for Defendant in Florida during the pertinent period.

## **FACTS**

A.  Plaintiffs' Allegations.

In their Motion, some Plaintiffs allege that following an initial, probationary period during which they were paid on an hourly basis, they were employed as "road supervisors," and paid on a salary basis, without overtime. (Dkt. 29 at 5; Dkt. 90 at 7.) But the declarations submitted in support of Plaintiffs' Motion do not all fit this profile. Three of the six Plaintiffs who filed declarations say they worked in Florida (Dkt. 29-1, 29-2, 29-3), two in North Carolina (Dkt. 29-4, 29-5), and one (briefly) in Kansas City, Missouri (Dkt. 29-6). All but one claim they were promoted to a salaried position as "road supervisor" after an initial 90-day probationary period.

3

Plaintiff Jean Wick, who worked for only two months, in Missouri, does not make this claim. (Dkt. 29-6.)

In the declarations filed in support of and cited in the Motion, Plaintiffs Alfredo Santos, Douglas Richey, Robert Koperski, Seaira Bright, and Jerel Bazemore admit they were not scheduled to work more than 40 hours in any week when they were hourly, probationary employees. (Dkt. 29-1, 29-2, 29-3, 29-4, 29-5.) Plaintiff Bazemore alleges that when he worked as an hourly driver, he worked more than 40 hours per week and was not paid the overtime differential. (Dkt. 29-5.) Plaintiff Wick alleges she was always an hourly employee but was required to work more than 40 hours a week and was denied overtime. (Dkt. 29-6.)

Though the salaried Plaintiffs made the conclusory assertion that they had no supervisory duties, four of the six acknowledged they also performed office and administrative duties such as scheduling, payroll, and dispatch in addition to (or, at times, instead of) driving. (Dkt. 29-1, 29-4, 29-5, 29-6.) For example, Plaintiff Bright alleged she was responsible for payroll, scheduling, and dispatch, and only transported patients some of the time. (Dkt. 29-4, ¶ 11.) Plaintiff Wick, who does not claim she was a "road supervisor" or that she ever was paid on a salary basis, alleges that she had office duties that included paperwork in addition to driving. (Dkt. 29-6, ¶¶ 2, 7.) Plaintiff Bazemore alleged he also worked as a dispatcher. (Dkt. 29-5, ¶ 5.) Plaintiff Santos also alleged he was employed as a dispatcher during a period of approximately 2 ½ months. (Dkt. 29-1, ¶ 12.)

Neither the Complaint, Motion, nor any Plaintiff's declaration alleged that Defendant's policies and practices concerning "road supervisors" were determined in a uniform or centralized manner or applied on a nationwide basis.

4

B.	Defendant's Evidence.

As Defendant explained in its opposition to Plaintiffs' original motion, Owl, Inc., provides a variety of transportation services under contract with the U.S. Department of Veterans Affairs ("the VA"), and currently has operations in eleven states, including Florida. (Decl. of Dr. Lester B. Walker, Dkt. 40-1, ¶ 4). In Florida, Owl has offices in Orlando, Daytona Beach, and Viera Beach. Orlando is the main office. (*Id.*, ¶ 9.) The Orlando, Florida office opened in July 2015. (*Id.*, ¶ 5.)

Owl contracts with the VA to provide a specific set of services for each particular VA hospital or facility. Each region or location is covered by a separate contract. (*Id.*, ¶ 7.) The types of services provided under each contract are different. For example, in Orlando, Owl provides patient transportation services – picking up qualified patients from their homes, taking them to appointments at the VA and associated clinics, and returning them home, and/or transporting them home from the hospital upon discharge. In contrast, in Atlanta, Owl operates a shuttle service to and from satellite parking lots. (*Id.*, ¶ 8.)

All new Owl driver employees go through a 90-day probationary period. After that period, they may remain hourly drivers or be promoted to a salaried, supervisory position. A driver also may switch between the two classifications. (*Id.*, ¶ 10.) Probationary drivers are paid by the hour and are not routinely scheduled to work over 40 hours per week. On rare occasions, client commitments may require an hourly driver to work more than 40 hours in a week: in that case, he or she is paid one and one-half times their hourly rate for every hour or fraction over 40 in that week. (*Id.*, ¶ 11; Dkt. 40-2.) Hourly (non-probationary) drivers also are not routinely scheduled to work over 40 hours per week. Again, on rare occasions, client commitments may require an

5

hourly driver to work over 40 hours in a week, in which case he or she would be paid one and one-half times their regular rate for those hours. (*Id.*, ¶ 11.)

The Orlando operations – including Daytona Beach and Viera Beach – are unique in that Owl serves a particularly large geographic area (in contrast, for example, with Owl's much more confined operations in Atlanta). Most patients prefer morning appointments and are likely to stay at the VA for some period waiting to be seen, and then return home later in the afternoon. This creates early morning and late afternoon rushes. Owl created the "road supervisor" position to give more senior employees flexibility in dealing with these surges and provide predictability in their weekly earnings. Road supervisors can make morning patient trips, return to the office and perform supervisory and administrative tasks like dispatch, payroll, accounting, and logistics, and then perform their afternoon patient trips. (*Id.*, ¶ 12.) While road supervisors may work more than 40 hours in a workweek, they would then work a reduced schedule the following week. Normally, road supervisors would not work more than 40 hours every week. (*Id.*, ¶ 13.)

Owl's Florida operations, where the vast majority of Plaintiffs were employed, are unique in requiring this level of flexibility. Roughly 30-40% of the employees in Florida are classified as supervisors and perform supervisory and administrative duties in addition to driving, as described above. In contrast, most other locations where Owl has contracts with the VA have no more than 3 to 5 supervisors, total. Again, that decision is driven by the geographic area to be covered, and the specific services being provided under contract with the VA. (*Id.*, ¶ 15.)

Plaintiffs, particularly the hourly drivers, may have drawn an erroneous conclusion that they were not paid overtime because of Owl's practice of paying its employees on a bimonthly – twice per month – basis, rather than weekly or biweekly. Plaintiffs' declarations are inconsistent on this point. Some of the declarants stated that hourly drivers did not work overtime, while others stated

6

that they did work overtime but were not paid the overtime premium. However, a review of their pay stubs tells a different story. Each bimonthly paycheck stub reflects a 15 or 16-day contiguous period. For example, Plaintiff Bazemore stated that he was not paid overtime when he worked as an hourly driver. (Dkt. 29-5, ¶ 6.) But his payroll records show that Mr. Bazemore was paid the required overtime differential. Bazemore's paycheck stub for October 16-31, 2015, shows 5 hours of paid overtime; November 1-15, 2015, shows 1.25 hours of paid overtime; February 1-15, 2016, shows 11.25 hours of paid overtime; and March 1-15, 2016, shows 7 hours of paid overtime. *See* (Dkt. 40-2.)

To recapitulate: Most of the Plaintiffs filing declarations were employed in Florida. Some say they were paid on a salaried basis, others that they were paid hourly, and some both at different times. Some say they were not scheduled to work overtime when paid hourly, some that they were paid overtime when they worked hourly, and some that they were not paid overtime when they worked hourly. Some say that in addition to driving, they performed supervisory and administrative tasks, while others claim they never did so. Nearly all of Plaintiffs' evidence concerns Defendant's alleged practices in Florida. No declaration or evidence supports the conclusion that Defendant maintained any centralized, uniform, or nationwide payroll practices that resulted in alleged FLSA violations nationwide.

## **ARGUMENT AND AUTHORITY**

The two nationwide classes Plaintiffs demand are overbroad. Because Plaintiffs worked at different locations, had varying job duties, were subject to different policies, and were paid different ways, the proposed nationwide salaried road supervisor and hourly driver classes will be unmanageable. At most, the facts as alleged support certification of two classes, consisting of (1) current and former salaried road supervisors and (2) hourly drivers who worked for Defendant in

7

Florida during the relevant time period. Plaintiffs have alleged no facts that tend to show a unified or nationwide policy or practice that would justify a broader geographical scope.

A.      Standard for Conditional Certification.

The FLSA permits collective action "against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). Under the FLSA, "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001); *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). District courts may, in their discretion, facilitate notice to potential plaintiffs to an FLSA collective action to implement this "opt in" procedure. *See Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 168–69, 110 S.Ct. 482 (1989).

The U.S. Court of Appeals for the Eleventh Circuit has "sanctioned a two-stage procedure." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The first stage is the "notice" or "conditional certification" stage. *Id.* at 1260–61. At this stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). Named plaintiffs "[have] the burden of showing a reasonable basis for [their] claim that there are other similarly situated employees" who, if notified, would opt into the action. *Morgan*, 551 F.3d at 1260–61. "Because the court has minimal evidence" at the notice stage, the reasonable basis standard is "fairly lenient" and "typically results in conditional certification of a representative class." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1213–14). "If the district court

8

'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in[,]'" and "[t]he action proceeds as a representative action throughout discovery." *Id.* (quoting *Mooney*, 54 F.3d at 1213–14).

At the notice phase, the District Court should determine: 1) whether there are other employees who wish to opt-in to the action; and 2) whether those employees are "similarly situated" with respect to their job requirements and pay provisions. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096–97 (11th Cir. 1996). Plaintiffs must show that their positions are similar to those positions held by putative class members. *Hipp*, 252 F.3d at 1217; *Grayson*, 79 F.3d at 1096. Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *See Hipp*, 252 F.3d at 1219 (citing *Grayson*, 79 F.3d at 1097); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). Plaintiffs may make this showing by "making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson*, 79 F.3d at 1097 (internal quotation marks and citation omitted).

B.   Plaintiffs Are Not Similarly Situated Nationwide.

In their Motion, Plaintiffs propose two classes: one consisting of Plaintiffs who allege they were denied overtime because, as "road supervisors," they were allegedly misclassified as salaried, exempt employees when they should have been classified (and paid overtime) as non-exempt employees in violation of 29 U.S.C. §213(a), which governs exemptions from overtime for *bona fide* executive, administrative, and professional employees. The second proposed class consists of Plaintiffs who allege they were paid hourly but were denied overtime when they worked more than

40 hours in any week, in violation of 29 U.S.C. §207(a), which requires hourly workers to be paid one and one-half times their regular payrate for hours worked over 40 in any workweek. Plaintiffs seek nationwide scope for each class.

    1.    <u>Plaintiffs Allege No Unified Policies</u>.

Plaintiffs fail to allege they were subject to any uniform policy or practice by Defendants that violated their rights under the FLSA. But a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05–CV–1681–TWT, 2006 WL 2085312, at *3 (N.D. Ga. Jul. 25, 2006) (internal quotation marks and citations omitted); *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91, 95–97 (S.D.N.Y. 2003) (a plaintiff must allege a common policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1139 n. 6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice.").

Plaintiffs allege no common, uniform practice or policy implemented by Defendant and applying to all drivers and all road supervisors at all its many locations across 11 states that allegedly violated the FLSA. In contrast, Defendant has shown that its policies and practices vary widely from state to state, depending on factors as varied as geography and the nature of services provided by contract to each VA hospital. For example, in Orlando, Defendant serves patients in a very large area, which necessitates early starts, late finishes, and slack hours in between. Defendant manages this workload by assigning early and late routes to its road supervisors, who have administrative responsibilities they can discharge during the middle part of the day. In

contrast, in Atlanta, Defendant does not provide individual patient transport, but only transportation to and from satellite parking lots. This service is much more predictable and easy to schedule and does not require the variable hours that are necessary in Orlando. The lack of any nationwide practices or policies makes this case unmanageable as a collective action, at least in the form demanded by Plaintiffs.

2. <u>Plaintiffs Worked in Different Locations, Subject to Different Rules</u>.

Plaintiffs' failure to allege nationwide policies or practices contraindicates certification of a nationwide class. In *Beecher v. Steak N Shake Operations, Inc.*, 904 F.Supp.2d 1289, 1298 (N.D. Ga. 2012), the court denied conditional certification to a putative nationwide class of employees because the court found the plaintiffs failed to show a reasonable basis for believing potential class members are similarly situated to each other or the named plaintiffs. The defendant in *Beecher* came forward with time records that showed the overtime had been paid. The court also observed that although the defendant's "stores have a typical structure, the same positions, the same associates' handbook, the same internal reports, and the same method for clocking in, clocking out, and reporting tips, this is also not enough to show Plaintiffs and potential class members are similarly situated." *Id.* at 1299. In addition, the different job assignments that the *Beecher* plaintiffs held – server, service trainer, cleaner, fountain drink operator, dresser, griller, dishwasher, fryer, cash register worker, drive-thru operator, and operations supervisor – would necessitate very individualized examinations of their claims. *Id.*

Plaintiffs in the instant case similarly purport to include employees who were salaried road supervisors, hourly drivers, payroll and administrative office workers, and dispatchers, a diversity of positions and pay systems that defy wholesale treatment. The *Beecher* plaintiffs, like the ones here, also failed to allege the existence of nationwide policies and practices. And although they

11

sought to conditionally certify a nationwide class, 21 of the 23 named and opt-in *Beecher* plaintiffs came from the Atlanta area. *Id.* As in *Beecher*, Plaintiffs' failure in this case to allege any evidence of centralized, uniform, or nationwide time and payroll practices is fatal to their demand for certification of nationwide classes. Accordingly, the Court should limit the proposed subclasses to the geographic scope that their allegations support: the state of Florida.

## CONCLUSION

Because the facts alleged by Plaintiffs fail to meet the minimal standards for certification of nationwide classes, conditional certification should be limited only to (1) current and former road supervisor employees who were paid on a salary basis during the relevant period in Florida, and (2) hourly drivers employed by Defendant during the relevant period in Florida, and notice provided accordingly.

Respectfully submitted this 4th day of May 2018.

|  |  |
|---|---|
|  | */s/ J. Larry Stine* |
|  | J. Larry Stine, Georgia Bar No. 682555 |
|  | jls@wimlaw.com |
| WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C. | |
| Suite 400, Lenox Towers | Admitted *Pro Hac Vice* |
| 3400 Peachtree Road, N.E. | |
| Atlanta, Georgia 30326 | |
| Phone: (404) 365-0900 | |
| Fax: (404) 261-3707 | |
|  |  |
|  | */s/ Anthony D. Tilton* |
|  | Anthony D. Tilton, Fla. Bar No. 108264 |
|  | atilton@cotneycl.com |
| COTNEY CONSTRUCTION LAW, LLP | |
| 8621 E. Dr. Martin Luther King Jr. Blvd. | |
| Tampa, Florida 33610 | |
| Phone: (813) 579-3278 | |
| Fax: (813) 902-7612 | *Counsel for Defendant* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JOSE PEREZ, ALFREDO SANTOS, and DOUGLAS RICHEY, on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs*,<br><br>v.<br><br>OWL, INC., d/b/a/ OWL, INC. TRANSPORTATION,<br><br>      *Defendant*. | Civil Action File No.<br><br>6:17-cv-1092-ORL-41-GJK |

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 4, 2018, I electronically filed the foregoing **Defendant's Brief in Opposition to Plaintiffs' Renewed Motion for Issuance of Notice under 29 U.S.C. §216(b)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

 

                                                    */s/ J. Larry Stine*
                                                    J. Larry Stine, Georgia Bar No. 682555
                                                    jls@wimlaw.com

WIMBERLY, LAWSON, STECKEL,
  SCHNEIDER & STINE, P.C.                          Admitted *Pro Hac Vice*
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 365-0900
Fax: (404) 261-3707