UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JOSE PEREZ, ALFREDO SANTOS and
DOUGLAS RICHEY,**

**Plaintiffs,**

**v.**                                                        **Case No: 6:17-cv-1092-Orl-41GJK**

**OWL, INC.,**

**Defendant.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 107), Plaintiffs' Motion for Summary Judgment on Liability (Doc. 108), Defendant's Opposed Motion in Limine: Regular Rate (Doc. 117), and Defendant's Motion to Dismiss Opt-In Plaintiffs (Doc. 129).

## I.    BACKGROUND

Defendant contracts with the Department of Veteran's Affairs ("VA") to provide non-emergency transportation services for patients, including transportation for patients in wheelchairs and those that require a stretcher. (Pls.' Statement of Facts, Doc. 109, ¶ 1; Def.'s Resp. to Pls.' Statement of Facts, Doc. 113, ¶ 1). Because Defendant provides services under a federal contract, it is subject to the Service Contract Act ("SCA"), 41 U.S.C. § 6701 *et seq*. 41 U.S.C. § 6702(a)(1). Among other things, the SCA requires that individuals employed by Defendant under its contracts with the VA be paid in accordance with prevailing rates as determined by the Secretary of Labor. *See id.* § 6703(1). Defendant is also required to pay its employees in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiffs are individuals who are or were employed by Defendant as drivers or road supervisors. The drivers, as relevant to this motion, were hourly employees paid under the SCA at the prevailing rate for taxi drivers. (Doc. 109 ¶ 14; Doc. 113 ¶ 14). The road supervisors were paid an annual salary and were not paid overtime. (Doc. 109 ¶¶ 4, 62; Doc. 113 ¶¶ 4, 62).

Plaintiffs bring a claim for breach of contract, alleging that their employment agreements incorporated the terms of the SCA and that Defendant improperly classified them thereunder. Specifically, Plaintiffs argue that they should have been paid as ambulance drivers instead of taxi drivers. Plaintiffs also bring a claim under the FLSA, alleging that the road supervisors were improperly designated as exempt employees and should have been paid overtime. Defendant has moved for summary judgment as to Plaintiffs' breach of contract claim[1], and Plaintiffs have moved for summary judgment as to both claims.

## II.   SUMMARY JUDGMENT

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward

---

[1] Plaintiffs' argument that Defendant's Motion for Summary Judgment is really a motion for reconsideration, which must be analyzed under the more stringent reconsideration standard, is without merit. This Court's previous Order (Doc. 87) was under the motion to dismiss standard and did not preclude Defendant from filing a motion for summary judgment.

with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

B.     **Analysis**

1.     *Breach of Contract*

As noted, Plaintiffs allege that their employment agreements incorporated the terms of the SCA and that Defendant breached those agreements by failing to pay them the proper wage thereunder. Specifically, Plaintiffs assert that Defendant improperly paid them as taxi drivers when they should have been paid as ambulance drivers. Notably, this is a claim for breach of contract and is not brought pursuant to the SCA; there is no private right of action under the SCA. *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 431 (11th Cir. 1994).

To prevail on a breach of contract claim, Plaintiffs must establish the following elements: (1) a valid contract; (2) a material breach; (3) causation; and (4) damages. *Handi-Van, Inc. v. Broward Cty.*, 116 So. 3d 530, 541 (Fla. 4th DCA 2013); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). The key to Plaintiffs' breach of contract claim lies in

the terms of the employment agreements. Plaintiffs argue that their oral employment agreements incorporated the terms of the SCA, but they do not offer any evidence that the SCA was explicitly incorporated. Instead, Plaintiffs assert that such terms were incorporated by operation of Florida law.

Under Florida law, "when parties contract upon a matter which is the subject of statutory regulation, the parties are presumed to have entered into their agreement with reference to such statute, which becomes a part of the contract, unless the contract discloses a contrary intention." *Westside EKG Assocs. v. Found. Health*, 932 So. 2d 214, 216 (Fla. 4th DCA 2005), *approved*, 944 So. 2d 188 (Fla. 2006). The SCA regulates the type of employment agreements at issue here. Thus, if the agreements were silent as to the amounts Plaintiffs would have been paid, then it is possible that compliance with the SCA would have been incorporated into them by operation of law. However, the record evidence here indicates that, instead, Plaintiffs were promised a certain rate of pay when they were hired, prior to doing any work for Defendant. (*See* Richey Dep., Doc. 110-12, at 41:21–42:5 (stating that he complained about being paid an hourly rate of $10.99 per hour during his "pre-interview" prior to starting his job with Defendant)); Walker Dep., Doc. 110-4, at 55:19–56:7 (assuming in an unrelated question that employees are informed of their rate of pay when they are hired and not disputing that fact in the answer; also indicating that the employees' wages are determined by the regional director prior to hiring them); Doc. 107 at 18 (asserting that there was no breach of any contract term because Plaintiffs were promised a certain rate and they were paid that rate); Pls.' Resp., Doc. 114-1, at 8–12 (failing to deny Defendant's factual assertions)).

Plaintiffs do not dispute Defendant's factual assertion that they were informed of their specific rate of pay prior to starting work. Instead, Plaintiffs appear to argue that this Court has

already determined that the SCA was incorporated into the agreements or, alternatively, that even if the agreements explicitly were for the taxi driver rate, such terms cannot be given effect because the rate is lower than the rate required by the SCA. Both of Plaintiffs' arguments fail.

First, Plaintiffs' argument that this Court has already determined that the SCA was incorporated into the employment agreements is wholly without merit. Plaintiffs rely on this Court's previous Order, (Doc. 87), which denied Defendant's Motion to Dismiss. Therein, as required by the motion to dismiss standard, the Court construed all facts and inferences in favor of Plaintiffs. The Court made no decision regarding what the evidence would ultimately show. The evidence has not borne out in favor of Plaintiffs. As explained above, the employment agreements contained a promise of an explicit rate of pay, which evidences an intention not to incorporate the SCA. Thus, because the agreements disclose an intention not to incorporate the SCA, the terms of the SCA are not incorporated as a matter of law. Because the terms of the SCA are not part of the agreements, Plaintiffs cannot prevail on their claim that Defendant breached the agreements by failing to comply with the SCA.

Alternatively, Plaintiffs assert that the promised rates of pay cannot be enforced because the rates are lower than the amounts required under the SCA. This theory, however, would create a private right of action under the SCA. Plaintiffs analogize this situation to one under the FLSA. Specifically, even if a contract provides that an employee will be paid less than what is required under the FLSA, the contract cannot abrogate the employee's right to receive the higher FLSA amounts. However, in such a situation, the employee enforces that right via a private right of action under the FLSA. There is no such analogous private right of action under the SCA. Plaintiffs may be correct that, if the Department of Labor opted to enforce a mis-categorization under the SCA, the employment agreements could not abrogate the SCA's requirements. But, Plaintiffs are not

permitted to bring such an enforcement action. Plaintiffs are limited to enforcing the terms of their employment agreements, which do not incorporate the SCA. Because it is undisputed that Defendant paid Plaintiffs the amounts they promised to pay them, Plaintiffs' breach of contract claim fails as a matter of law.[2]

       *2.    FLSA*

In their Motion for Summary Judgment, Plaintiffs assert that when they were employed as road supervisors, they were inappropriately categorized as exempt employees and not paid overtime. Defendant counters that there are issues of fact regarding whether the road supervisors are exempt.

Generally, employees are entitled to overtime pay at one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). However, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempted from the overtime requirement. *Id.* § 213(a)(1). "The employer bears the burden of establishing that an employee is exempt, and [courts] construe exemptions narrowly against the employer." *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016).

Defendant relies on the executive and administrative exemptions. An exempt administrative employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and it must "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)–(3). An exempt executive employee's "primary duty is management of the enterprise in which the employee is employed or

---

[2] Given this holding, the Court declines to determine whether the taxi driver rate Plaintiffs were paid was the proper rate under the SCA.

of a customarily recognized department or subdivision thereof." Additionally, the individual must "customarily and regularly direct[] the work of two or more other employees" and must have "the authority to hire or fire other employees or [his or her] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [must be] given particular weight." 29 C.F.R. § 541.100(a)(2)–4).

Quite frankly, the Court has no idea what the road supervisors do. The evidence on the record is entirely conflicting.[3] Defendant presented evidence that the road supervisors' primary duties involved managing the daily workflow and dispatching drivers, training new employees, evaluating the drivers' work, opening and closing the office, and preparing payroll information. (Santos Dep., Doc. 110-11, at 8:8–9:2; Walker Dep. Vol. 2, Doc. 110-5, 123:19–124:5, 125:1–8, 129:25–130:13). Plaintiffs, on the other hand, have presented evidence that road supervisors' job duties are nearly identical to those of the drivers—i.e., that the road supervisors' primary duty is driving patients. (Santos Decl., Doc. 110-6, ¶¶ 5, 7; Richey Decl., Doc. 110-7, ¶¶ 5, 7; Koperski Decl., Doc. 110-8, ¶ 4; Bazemore Decl., Doc. 110-10, ¶¶ 7–8). Given these issues of fact, the Court cannot make a determination as to whether Defendant properly categorized road supervisors as exempt employees,[4] and Plaintiffs' Motion for Summary Judgment will be denied.

---

[3] Indeed, one Plaintiff's own testimony is conflicting. (*Compare* Santos Dep., Doc. 110-11, at 8 (testifying that when he was a road supervisor, he worked as a dispatcher, trained employees, and filled out payroll information) *with* Santos Decl., Doc. 110-6, ¶ 7 (averring that his work both as an hourly driver and as a road supervisor "consisted entirely of transporting [VA] patients for [Defendant].")).

[4] To the extent Plaintiffs argue that Defendant's owner, Laster Walker, admitted that the road supervisors were non-exempt, it is unclear whether, in the cited testimony, Walker is stating that there were certain employees who were mis-identified as exempt road supervisors—i.e., they were labeled road supervisors, but they were not actually doing the road supervisor job—or that the road supervisor position itself should have been classified as non-exempt. (Doc. 110-5 at 181:3–16 (indicating that he "realized that the road supervisor wasn't exempt employees" but also indicating that only some employees were transitioned back to hourly). Moreover, Plaintiffs have

### III.   MOTION IN LIMINE

In Defendant's Motion in Limine, it argues that Plaintiffs should be prohibited at trial from arguing that the rate that should be used to calculate any overtime is the SCA rate, instead of the rate that they were actually paid. In light of the Court's analysis on Plaintiffs' breach of contract claim, the Court agrees with Defendant. Plaintiffs do not have the ability to enforce the SCA rates, and therefore, they cannot use such rates as the basis of their overtime claims.

### IV.   MOTION TO DISMISS OPT-IN PLAINTIFFS

Defendant asserts that the Opt-in Plaintiffs in this case must be dismissed because, at the time of filing the motion, the Court had not yet certified this case as a collective action. Since then, however, the case has been certified as a collective action, and therefore, Defendant's Motion to Dismiss will be denied as moot. The Motion is also moot insofar as it concerns Plaintiffs' attempt to certify their breach of contract claim as a class action. Because the breach of contract claim fails as a matter of law, the class will not be certified.

### V.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Partial Summary Judgment (Doc. 107) is **GRANTED**. Defendant is entitled to judgment in its favor as to Plaintiffs' breach of contract claim.[5]

2. Plaintiffs' Motion for Summary Judgment on Liability (Doc. 108) is **DENIED**.

3. Defendant's Opposed Motion in Limine: Regular Rate (Doc. 117) is **GRANTED**. Plaintiffs are prohibited from introducing evidence at trial that the base rate for

---

not cited any authority for the proposition that a lay opinion by a company representative regarding a legal conclusion can bind the company when it continues to contest the conclusion.

[5] The Court will enter judgment at the conclusion of these proceedings.

calculating their overtime claims should be anything other than the rate of pay they actually received.

4. Defendant's Motion to Dismiss Opt-In Plaintiffs (Doc. 129) is **DENIED as moot**.

5. Plaintiffs' Motion to Remove or Correct Docket Entry Number 103 (Doc. 105) is **DENIED as moot**.[6]

6. Plaintiffs' Motion for Extension of Time (Doc. 106) and the Joint Motion to Extend Time (Doc. 111) are **DENIED as moot**.

7. Plaintiffs' Unopposed Motion for Leave to File Plaintiffs' Opposition (Doc. 114) is **GRANTED**. Plaintiffs' Responses (Doc. Nos. 114-1 & 114-2) are accepted as timely filed.

**DONE** and **ORDERED** in Orlando, Florida on May 17, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[6] The Court acknowledges that it mistakenly denied as moot Plaintiffs' Motion for Class Certification (Doc. 48) relating to Plaintiffs' breach of contract claim, conflating that motion with the motion for collective action certification, which had been ruled on. However, given the Court's ruling on summary judgment—that the contract claim fails as a matter of law—the Motion for Class Certification (Doc. 48) is now moot.