UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE PEREZ, ALFREDO SANTOS
and DOUGLAS RICHEY,
                         Plaintiffs,

v.                                                    Case No: 6:17-cv-1092-CEM-DAB

OWL, INC.,
                         Defendant.

_____

REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT:

This cause came on for consideration with oral argument regarding the

parties' settlement[1] and on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' SECOND ASSENTED-TO MOTION FOR SETTLEMENT APPROVAL [OF THE FLSA COLLECTIVE ACTION] (Doc. 212)** |
| **FILED:** | **April 4, 2022** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** with the revision to the "Notice of Collective Action Settlement" described *infra*.

In this dispute concerning unpaid wages to drivers of a corporation who

---

[1] A hearing was held on Plaintiffs' previous Renewed Motion for Approval of the Settlement Agreement on February 3, 2022 (Doc. 203), which was denied. The instant Motion is the latest iteration seeking approval of the parties' settlement agreement, now with an addendum.

contracted with the federal government, the parties have reached a proposed settlement on the overtime claims under the Fair Labor Standards Act ("FLSA") and seek to have judgment entered so that the appeal of Plaintiffs' other claim—for breach of contract relating to their regular pay rate—may proceed. If the settlement of the collective action under the FLSA is approved, then the settlement funds totaling $350,000 will be held in escrow until Plaintiffs' appeal on their breach of contract claim is fully adjudicated.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant Owl, Inc. contracts with the Department of Veteran's Affairs ("VA") to provide nonemergency transportation services for patients, including transportation for patients in wheelchairs and those who require a stretcher. Doc. 151. On June 15, 2017, Plaintiffs Jose Perez, Alfredo Santos, and Douglas Richey (collectively, the "Named Plaintiffs") filed a Class Action and Collective Action Complaint on behalf of themselves and other "similarly situated individuals, namely, all other persons who have worked for [Defendant] as drivers transporting patients." Doc. 1 at ¶ 11.

Because Defendant provides services under a federal contract, it is subject to the Service Contract Act ("SCA"). Doc. 151 at 1 (citing 41 U.S.C. § 6701 *et seq.*; 41

---

[2] The background facts are incorporated from District Judge Mendoza's Order granting partial summary judgment to Defendant on Plaintiffs' breach of contract claim. Doc. 151.

U.S.C. § 6702(a)(1)). Among other things, the SCA requires that individuals employed by Defendant under its contracts with the VA be paid in accordance with prevailing rates as determined by the Secretary of Labor. *Id.* (citing 41 U.S.C. § 6703(1)). Defendant is also required to pay its employees in accordance with the FLSA. *Id.* (citing 29 U.S.C. § 201 *et seq.*).

Named Plaintiffs alleged that they worked as drivers for Defendant, and routinely worked in excess of forty hours per week but were not properly paid overtime in violation of the FLSA; Plaintiffs brought this claim (Count I) as a collective action. Doc. 1 at ¶ 1, 9-10. Defendant denied that it failed to properly pay the drivers and asserted that driver supervisors were exempt from overtime. Doc. 16.

On March 11, 2019, District Judge Mendoza conditionally certified two collective subclasses of hourly drivers and road supervisors:

> a.  Road Supervisors: Drivers employed by Owl, Inc. since June 15, 2014, who have been labeled as "road supervisors" and paid on a salary basis.
> b.  Hourly Drivers: Drivers employed by Owl, Inc. since June 15, 2014, who have been paid on an hourly basis.

Doc. 134 at 2.

Named Plaintiffs also alleged in a claim brought as a "Rule 23 class action" (Count II) that Defendant breached the drivers' employment agreements—which they alleged incorporated the terms of the SCA—and that Defendant improperly classified and failed to pay them "at the applicable prevailing wage rate for all hours

worked." Doc. 1 at ¶ 3, 10-11. The drivers were hourly employees paid under the SCA at the prevailing rate for taxi drivers, and the road supervisors were paid an annual salary. Doc. 151. Named Plaintiffs argued that the drivers should have been paid as ambulance drivers (or shuttle bus drivers, according to Plaintiffs) instead of taxi drivers. *Id.* at 2.

However, on May 17, 2019, Judge Mendoza granted summary judgment for Defendant on the breach of contract claim (Count II). Doc. 151. He found as a matter of law Plaintiffs could not prevail on their claim that Defendant breached the employment agreements by failing to comply with the SCA because the Act did not provide a private right of action. *Id.* at 5-6. Additionally, he granted Defendant's motion *in limine* to prevent Plaintiffs from introducing evidence at trial that the base rate for calculating their overtime claims should be anything other than the rate of pay they actually received. *Id.* He also denied Plaintiffs' Motion seeking summary judgment as to whether Defendant properly categorized road supervisors as exempt employees under the FLSA. *Id.* at 7.

On Named Plaintiffs' motion, Judge Mendoza certified the summary judgment order for interlocutory appellate review. Doc. 157. On November 19, 2019, the Eleventh Circuit issued its mandate denying Named Plaintiffs permission to appeal the judgment as to Count II. Doc. 158. The parties proceeded with discovery and trial preparation. At a trial status conference on August 3, 2021, the parties

advised Judge Mendoza that they had reached a settlement on the sole remaining claim under the FLSA. Docs. 160, 177.

On November 16, 2021, Named Plaintiffs filed a Renewed Motion for Approval[3] of their settlement agreement, attaching a signed copy of the parties' settlement agreement (the "Settlement Agreement"). Doc. Nos. 188, 188-1. As Plaintiffs explained, Judge Mendoza's rulings "significantly reduced the damages available to the Named and Opt-in Plaintiffs as it limited Plaintiffs' damages solely to overtime pay at the rate they were already paid." Doc. 188 at 3. They further explained:

> Rather than proceed to a trial solely to determine the named and opt-in Plaintiffs' damages at this stage, [Defendant] Owl has agreed to pay each individual who timely filed an opt-in form and worked overtime without receiving time-and-a-half for all hours over 40 within the statute of limitations, the amount of overtime they are owed pursuant to this Court's rulings, plus one-half liquidated [] damages, for a total of $225,000. The parties have also separately negotiated Plaintiffs' attorney's fees of $95,000 and service award payments to the three Named Plaintiffs totaling $30,000.

*Id.*

On January 20, 2022, concerned about the "service award payments," the Court ordered the parties to provide briefing regarding whether the holding in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), *mandate withheld*

---

[3] On October 13, 2021, Named Plaintiffs had filed a motion seeking approval of the parties' settlement agreement (Doc. 183), which was denied because the copy of the agreement attached to the motion was not signed. Doc. 187.

*pending petition for rehearing en banc*, No. 18-12344 (Nov. 9, 2020), would preclude the additional payments to Named Plaintiffs. Doc. 189. Both sides provided additional briefing on this issue. (Docs. 191, 199).

Following a hearing on February 3, 2022 (Doc. 203), the Court denied the Renewed Motion for Approval of the Settlement because several issues, in addition to the *Johnson* "service awards" issue, precluded granting approval: inconsistencies in the description of the amount of back wages and liquidated damages to the Opt-In Plaintiffs (versus the Renewed Motion); the lack of explanation of Defendant's potential "good-faith defense" justifying reduction in Plaintiffs' liquidated damages; a provision seeming to allow modification without Court review; and conflicts among the applicable time periods for determining the distribution amounts to the Opt-In Plaintiffs. Doc. 211.

On April 4, 2022, Named Plaintiffs filed their Second Motion for Approval (Doc. 212) of the settlement resolving the FLSA collective action claims and attaching an Addendum to the Settlement Agreement (Doc. 212-1). [4] The

---

[4] The Second Motion for Settlement Approval purports to "adopt" the arguments in Plaintiffs' previous Renewed Motion for Settlement Approval. (Doc. 212 at 2) ("Rather than restate all of the facts and arguments in support of their motion for settlement approval, Plaintiffs generally rely on the background and arguments made in their earlier-filed motion in support of settlement approval."). This is a clear violation of Local Rule 3.01(a) which requires the movant to include the relief requested and the legal memorandum in support in the motion—not incorporate by reference arguments from a previous motion. *See Thomas v Chenega Infinity, LLC*, Case No. 6:18-cv-978-PGB-DCI (Doc. 75 at 3 n.1) (M.D. Fla. Jan. 9, 2020) ("[T]his process has been more cumbersome and time-consuming due to that failing.").

Addendum resolves the concerns that the Court previously raised with the Renewed Motion and the parties' Settlement Agreement as to the amount of back wages and liquidated damages, deletes completely the proposed "services awards" to Named Plaintiffs with the $30,000 redistributed pro rata to all Plaintiffs[5]; explains the basis for Plaintiffs' compromise of their liquidated damages claims; and clarifies that all modifications to the Settlement Agreement require Court approval.

## II. ANALYSIS OF THE PROPOSED FLSA SETTLEMENT

### A. FLSA Collective Action

Named Plaintiffs brought their FLSA claims for overtime pay on behalf of all of Defendant's drivers who worked more than 40 hours in a week (during the relevant time period) who choose to opt into the action under 29 U.S.C. § 216(b). Doc. 1 ¶ 36-39. The FLSA authorizes one or more employees to bring a collective action against their employer for unpaid minimum wages or unpaid overtime "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical Rule 23 class action in which class members must opt out in order not to be bound by the judgment, in a collective action under the FLSA, each putative plaintiff must affirmatively opt-into a § 216(b) action. *Hipp v.*

---

[5] Plaintiffs state that they "retain the right to appeal" the portion of the Court's previous Order denying distribution of incentive payments to the Named Plaintiffs and "may refile for settlement approval if the incentive payments are restored on appeal." Doc. 212 at 3 n.1. The Court expresses no opinion on the availability to appeal the issue.

*Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001); *Freeman v. TrainingWheel Corp., LLC*, No. 2:19-CV-52-FTM-38UAM, 2019 WL 11502467, at *1 (M.D. Fla. May 10, 2019), *report and recommendation adopted*, No. 2:19-CV-52-FTM-38UAM, 2019 WL 2281677 (M.D. Fla. May 29, 2019).

    *1. Two-tiered approach*

    In the Middle District of Florida, a "two-tiered" approach to collective action settlements is applied, as explained by Judge Howard in *Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 12859415, at *1 (M.D. Fla. May 6, 2015):

> The parties must first file a motion seeking conditional certification of the collective action. The motion should also request authorization to provide notice of the proposed settlement to potential members of the collective action. Once granted, the parties will then issue the notice, and class members will have the opportunity to opt-in and/or object to the proposed settlement. Following the opt-in period, the parties must seek final certification of the collective action and approval of the settlement. At that time, the Court will conduct a fairness hearing to determine whether to finally certify the collective action and approve the settlement.

*Id.* On March 11, 2019, Judge Mendoza granted the Named Plaintiffs' Motion for Issuance of Notice and conditionally certified the collective subclasses of hourly drivers and road supervisors. Doc. 134; *see* Doc. 88.

    *2. Settlements under the FLSA*

    In *Lynn's Food Stores, Inc. v. United States Department of Labor,* the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

679 F.2d 1350, 1352-53 (11th Cir. 1982). Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id.*; *see also Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-PCF-DAB, 2007 WL 2298032, at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of FLSA claim in arbitration proceeding was not enforceable under *Lynn's Food* because it lacked Court approval or supervision by the Secretary of Labor). Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. *Lynn's Food Store*, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of counsel.

*Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994);

*Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-ACC-JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[6]

In addition to the above factors, the Court must also consider the reasonableness of the attorney's fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement);[7] *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D. Fla. 2008). The parties may demonstrate the reasonableness of the attorney fees by either: 1)

---

[6] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

applying the lodestar method; or 2)representing that the parties agreed to plaintiff's attorney's fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). When attorney's fees are not negotiated separately, however, "the reasonableness of the settlement cannot be approved on its face but must be carefully scrutinized using the lodestar approach." *Cohen v. Goodyear Tire & Rubber Co.*, Case No. 6:09-cv-496-Orl-31DAB, 2009 WL 3790292, at *3 (M.D. Fla. Nov. 9, 2009). "[A]ny amount above the lodestar is unreasonable unless supported by some special circumstance." *Id.* at *4.

### B. *Provisions of the Settlement Agreement*

#### 1. *Notice of Settlement*

Plaintiffs' counsel previously sent notices of the collective action to more than 2,700 individuals, of which 576 individuals[8] (including the Named Plaintiffs) filed opt-in forms to join the lawsuit prior to the deadline; another 69 opted-in after the deadline[9] and are included in the settlement. Doc. 212 at 3.

The parties propose in the Settlement Agreement that each of the settling Plaintiffs (*see* Doc. 212-1 at 7-21 (revised final list)) will receive a "Notice of

---

[8] The parties' Settlement Agreement (Doc. 188-1 at 3) says a "total of 574 individuals including Plaintiffs, have filed Opt-In Consent Forms." Doc. 188-1. The discrepancy is not significant.

[9] However, "at trial or on remand" following the appeal on the breach of contract claim, "Defendant may argue that these individuals are not properly in this case." Doc. 188.

Settlement and Settlement Award" via First Class Mail which will inform them of the settlement, how each share was calculated, the amount of the check, and inform them that by depositing the check, they will release all of their claims against Defendant under the FLSA and similar wage and hour laws. Doc. 188-1 at 7. However, Plaintiffs point out that nothing in the release precludes them from receiving additional monies in the form of a higher prevailing wage rate if such wages are received pursuant to the SCA. *Id*. at 8. Plaintiffs are not required to submit a Claim Form as they have already opted-in to the lawsuit.

If checks are uncashed after 45 days, Plaintiffs' Counsel will attempt to contact Plaintiffs whose checks are returned as undeliverable or who have not cashed their checks to obtain updated addresses. Any checks that have not been cashed after notification to Plaintiffs' Counsel will be redistributed to the Named and Opt-In Plaintiffs on a pro rata basis. *Id.* Any Plaintiffs who fail to execute and cash the check will be dismissed from the case without prejudice and have thirty days to refile their individual claims. *Id.*

2. *Monetary Terms*

The total settlement amount is $350,000, minus $95,000 for attorney's fees. Doc. 188-1; Doc. 212-1 (Addendum). The net portion of the settlement, $255,000, will be distributed to the 645 Settlement Members on a pro rata basis. Doc. 188 at 7. The pro rata share of each settling Plaintiff was determined by the amount of overtime

they worked without receiving overtime pay based on Defendant's pay records. The Settlement Agreement provides that, for drivers who filed their Opt-In Forms prior to July 7, 2019, they will be paid damages based on the amount of unpaid overtime they are owed from June 16, 2014 to July 15, 2019 with a minimum payment of at least $100. Doc. 188-1 at 5. Drivers who filed an Opt-In Form after July 7, 2019, or who did not work overtime during the statute of limitations, will receive a sum of $100. *Id*. Following an issue the Court raised with inconsistencies, the Addendum to the Settlement Agreement now explains: The distribution will be treated for tax purposes as 66.7% back wages and 33.3% liquidated damages. Defendant shall issue IRS form W-2 for the back wages and 1099 for liquidated damages to each individual. Doc. 212-1. However, the parties' proposed "Notice of Collective Action Settlement" (Doc. 212-2 at 2) retains the old language of 50%/50% split between wages and liquidated damages; therefore, **it is respectfully recommended that Plaintiffs be directed to revise the Notice to conform to the Addendum.**

If their FLSA overtime claims had not settled, Plaintiffs point out that they would risk either not being able to prove their overtime damages or receive any liquidated damages if Defendant could levy a good faith defense. The parties agree in the Settlement Agreement that they are not waiving any of their respective arguments on the merits of Plaintiffs' claims concerning the prevailing wage or

higher "regular rate" for the calculation of overtime owed under the FLSA; the parties agree to the amount of overtime worked but continue to dispute the rate at which Plaintiffs should have been paid. *Id.*

If the Settlement Agreement is approved, the Court will enter a judgment against Defendant for $350,000, which will permit Plaintiffs to appeal the summary judgment rulings on their right to recover the prevailing wage. Doc. 188-1 at 5-6. If Plaintiffs are successful on their appeal, they retain the right to pursue further litigation on their hourly and overtime rate of pay at the proper federally mandated prevailing wage in this Court on remand from the appellate court. Plaintiffs argue that, even though the value of this settlement is $350,000, this is a minimum recovery, and it does not foreclose Plaintiffs, Opt-Ins, and other Rule 23 class members (which includes all of Defendant's drivers nationwide from approximately June 2015 to the present) from obtaining relief at the higher "regular rate." Doc. 188 at 6. Since the difference between the taxicab rate (approximately $11 per hour) and the rates required for shuttle bus drivers ($15 per hour) or ambulance drivers ($18 per hour) is so significant, Plaintiffs argue, the class and the collective they represent would stand to recover substantially more in damages should the Eleventh Circuit hold that the drivers have a private right of action under the SCA to recover the prevailing wage. *Id.* Therefore, by entering into the Settlement Agreement, Plaintiffs do not waive any arguments regarding whether

they were paid the proper prevailing wage or whether they may recover overtime at a higher "regular rate." *Id.* at 6. The parties have agreed that the money Defendant escrows for the settlement will be applied to any judgment or settlement subsequently obtained by Plaintiffs. Doc. 188-1 at 6.

If the appellate court affirms Judge Mendoza's previous rulings on the prevailing wage and overtime rates—finding the previously-paid wage rate was correct—Defendant will continue to fund the Settlement; however, settlement distribution will be made within 30 days of a dismissal of the lawsuit. In the event that the Settlement is not fully funded at the time that an appellate ruling is issued affirming the District Court's decision, Plaintiffs will distribute the Settlement on a pro rata basis within 30 days of the appellate ruling and will make another distribution within 30 days of the Defendant's final installment payment. *Id.* at 6.

3. *Two-year Statute of Limitations Applies*

The Court previously noted that there was an inconsistency in the limitations periods stated for determining the amount of the distributions to the settling Plaintiffs. *See* Doc. 211 at 5. Initially, the Settlement Agreement stated that the settlement amounts were "based on the number of workweeks the driver worked since June 16, 2014 (Doc. 188-2 at 1) which was *three years* before the Complaint was filed in the case. However, the original "Settlement Distribution" List stated the

settlement amounts were based on workweeks within the *two-year* statute of limitations. *Compare* Doc. 188-1 at 5 *with id.* 16-30; Doc. 188 at 14.

The ordinary statute of limitations in FLSA cases is two years, and for willful violations, pursuant to 29 U.S.C § 255(a), it is three years. *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1323 (11th Cir. 2007). The statute of limitations is not tolled until the plaintiff files a written consent to opt-in or a separate complaint. *Parilla v. Allcom Constr. & Installation Serv., LLC*, 688 F.Supp.2d 1347, 1349 n.5 (M.D. Fla. 2010). The parties' Second Motion for Approval now clarifies that Plaintiffs have calculated the settlement shares based on the number of weeks Opt-In Plaintiffs worked within the FLSA's two-year statute of limitations dating from the date when the individual filed their Opt-in Form; the revised Settlement Distribution list reflects this update. Docs. 212 at 4; 212-1 at 7.

4. *Compromise of Liquidated Damages Claims*

The Court previously pointed out that the parties provided no explanation for Plaintiffs' compromise of 50% of their liquidated damages claims. Doc. 211 at 4. Generally, an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation and an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This award of liquidated damages is mandatory unless the employer can show that its actions were taken in good faith and that it had

reasonable grounds for believing its actions did not violate the statute. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008).

Plaintiffs explain in the parties' Second Motion for Approval that an employer may avoid liquidated damages if it can show that its overtime pay policy was undertaken "in good faith and" where the employer "had reasonable grounds for believing that" its actions were not in violation of the FLSA. 29 U.S.C. § 260. "To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013). Plaintiffs explain that the compromise of 50% of liquidated damages is because:

> [There] remains a dispute as to whether driver-supervisors are exempt from overtime. The Court denied Plaintiffs' motion for summary judgment on that issue. [Doc.] No. 151 at p. 7. Defendant, as a compromise, offered to pay a total amount of the back wages had it lost that issue at trial. Plaintiffs had rejected that offer but the Parties through intense negotiations compromised to take 50% of the liquidated damages plus the total back wages plus additional money to arrive at a total number that Defendant was willing to pay. Thus, the amount of liquidated damages represents a fair compromise that produces significant value for the Opt-In Plaintiffs with no assurance of success.
>
> In addition, since the Court denied Plaintiffs' request to issue $30,000 in service awards to the three named Plaintiffs, pursuant to the Settlement Agreement, that amount would be redistributed to Opt-Ins with timely claims on a pro-rata basis. As a result, the Opt-Ins will receive slightly more than 50% of their projected liquidated damages.

Doc. 212 at 2-3. Plaintiffs' compromise was based on the recognition that, at trial, Defendant could potentially avoid liquidated damages if it could prove that it had

a good faith reason for paying its drivers the way it did. The Court finds that compromise of 50% of the liquidated damages was fair and reasonable.

*5. Modifications Require Court Approval*

The Court previously identified an issue with a provision in the Settlement Agreement that indicated modifications to the Agreement did not require Court approval. Doc. 188-1 at 8. As the Court noted, this provision appeared to negate the necessity of Court approval of the Agreement, as it provides for the parties to modify the Settlement Agreement without any review by the Court, which made it unenforceable. *See Madison v. United Site Servs. of Fla., Inc.*, No. 6:16-CV-1991-CEM-DCI, 2018 WL 2197757, at *1 (M.D. Fla. May 14, 2018) ("Pursuant to *Lynn's Food Stores, Inc.*, 679 F.2d at 1355, any future modifications to the Settlement Agreements are unenforceable absent judicial approval.").

However, in the Addendum, the parties have explicitly agreed that the Settlement Agreement may not be modified without submitting the modifications for Court approval. Doc. 212 at 4. The parties also point out that Paragraphs 13 and 16 of the Settlement Agreement require Court approval of the Settlement Agreement, including the attorney's fees and/or any dismissal of the litigation. Doc. 188-1 at 7-8.

*6. Retaining Jurisdiction Over Settlement Agreement*

The Settlement Agreement provides that the District Court will continue to have jurisdiction over this matter until all of the installment payments are complete. As an initial matter, while the case is on appeal, this district court does not retain jurisdiction until the Court of Appeals issues the mandate (if it remands it). Additionally, it is generally not the practice in the Middle District to retain jurisdiction indefinitely over any settlement agreement, which can be enforced in the state court in a breach of contract action.

The Settlement Agreement provides for Defendant to pay the $350,000 into an escrow account in $10,000 monthly installments starting eight months after execution of the Settlement Agreement. Doc. 188-1 at 4. Assuming the Agreement is executed this month, the monthly installments would continue from March 2023 for 35 months until January 2026. The Agreement further provides that, if the appeals process affirms the District Court's rulings on the prevailing wage and overtime rates, Defendant will continue to fund the Settlement installments; if the Settlement is not fully funded at the time that an appellate ruling is issued affirming the District Court's decision, Plaintiffs will distribute the Settlement on a pro rata basis within 30 days of the appellate ruling and will make another distribution within 30 days of Defendant's final installment payment. *Id*. at 5. The terms of the

parties' Settlement Agreement in this case require escrow [10] of the funds and contemplate eventual distribution(s) once the appellate court rules on breach of contract claim, deciding how much the regular rate of pay should be; if this results in an increased recovery of wages, the District Court will necessarily revisit the distribution of funds when the appeal concludes. The Court's retention of jurisdiction over the Settlement Agreement, given the unique terms of the Agreement in this case, is warranted.

C. *Assessment that the Settlement Agreement is Fair and Reasonable*

The Court finds that the Settlement Agreement in this case is "fair and reasonable" in accordance with the *Lynn's Foods* requirements. Plaintiffs were able to compare Defendant's numbers with their own calculations based on Defendant's sign-in/sign-out sheets and determined that the amount of unpaid overtime was accurate. Doc. 188 at 11.

All of the Named and Opt-in Plaintiffs will recover a pro rata share of the Net Settlement Amount of $255,000. Under the proposed allocation formula, they will receive shares based on the amount of damages they have that are recoverable under the FLSA. Doc. 188 at 14. Those Plaintiffs who worked unpaid overtime hours within the two-year FLSA statute of limitations will receive their single damages (based on Judge Mendoza's summary judgment ruling) at the wage rate they can

---

[10] The Settlement Agreement does not specifically state where the funds will be escrowed.

recover and Defendant's payroll records. *Id.* Individuals who worked some weeks for Defendant between two to three years after filing their opt-in forms will receive a minimum share of $150. Individuals with no timely claims under the FLSA will receive a minimum share of $100. Plaintiffs contend that their "settlement amounts will directly correspond to the amount of damages they can recover in this case." *Id.* Additionally, they point out, the Settlement Agreement specifically provides that they will be able to appeal the summary judgment rulings and potentially recover more damages following the appeal of the breach of contract claim. Doc. 188 at 11-12. The proposed allocation formula is fair and reasonable.

Applying the factors that the Eleventh Circuit has found district courts should consider from *Leverso v. SouthTrust Bank of Alabama,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994), the Court finds they support approval of the Settlement Agreement in this case. The parties, represented by experienced counsel, have litigated the case through summary judgment, completed discovery, and had prepared the case fully for trial at the time it settled. There is no evidence of "collusion" behind the settlement. As Plaintiffs point out, the settlement will allow them to pursue an appeal of the summary judgment ruling on their right to recover the prevailing wage under the SCA. By holding the settlement funds in escrow until the appeals process terminates, the Settlement Agreement will allow Plaintiffs, in the event they are successful on appeal, to return to the district court and seek additional damages

for their prevailing wage rate. However, if Defendant prevails on appeal, then the settlement will be disbursed pursuant to the parties' Settlement Agreement in one or two increments. *See* Doc. 188 at 4. Settlement on this issue, with Opt-in and Named Plaintiffs receiving their pro rata amounts of the overtime wage owed (within the statute of limitations period) and 50% of their liquidated damages, is fair and reasonable. If the parties had not settled, Plaintiffs concede that they could have lost their FLSA overtime claims at trial or on appeal.

The Plaintiffs were represented by experienced counsel [11] who practice nationwide and are specialists in the wage and hour arena; they have evaluated the merits of the claims made against Defendant in the lawsuit, conducted interviews with the Named and Opt-In Plaintiffs, obtained and reviewed documents relating to Defendant's compensation policies and practices, and analyzed payroll data that they obtained from Defendant. Doc. 188-1 at 3. Based on their analysis and evaluation of a number of factors, and recognizing the risks of litigation, Class Counsel has opined that the terms and conditions of the Settlement Agreement are

---

[11] In the supporting Declaration of Plaintiffs' lead counsel Shannon Liss-Riordan, she lists their experience and some recognitions, such as in 2015 Best Lawyers in America (Chambers) calling her "probably the best known wage class action lawyer on the plaintiff side in this area, if not the entire country." Doc. 188-3. Attorney Stine has extensive DOL experience and 29 years handling FLSA and worker pay under federal service contracts; he is co-author of the treatise WAGE AND HOUR LAW: COMPLIANCE AND PRACTICE. *Id.*

fair and reasonable, and the Agreement is in the best interests of Named and Opt-In Plaintiffs. *Id.*

Having thoroughly reviewed the parties' Motions to Approve the Settlement Agreement (Docs. 188, 212), the terms of the Settlement Agreement (Doc. 188-1) and the Addendum (Doc. 212-1), Judge Mendoza's prior rulings (Doc. 134, 151) certifying the collective and granting summary judgment, it is respectfully **RECOMMENDED** that the parties' Settlement Agreement be **APPROVED**.

**D. *Attorney's Fees***

Under the Settlement Agreement, Plaintiffs' counsel will receive $95,000 in attorney's fees. Doc. 188-1 at 3. In the Motion, the parties represent that "counsel's fees were agreed upon separately without regard to the amount paid to each Plaintiff or Opt-in Plaintiff." Doc. 188 at 18. In *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), Judge Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.* at 1228. Judge Presnell maintained that if the matter of attorney's fees "[is] addressed independently and *seriatim*, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id.* The Court finds this reasoning persuasive.

In this case, the Settlement Agreement constitutes a compromise of Plaintiffs' claims; the Motion states a reasonable basis for such compromise; and the parties represent that Plaintiffs' claims were resolved separately and apart from the issue of attorneys' fees and costs. In addition, Plaintiffs' counsel has provided supporting documents and estimates to support a lodestar analysis, which it is not necessary for the Court to conduct in light of *Bonetti*. Nonetheless, Plaintiff's counsel represents that three lawyers and a paralegal spent approximately 1,100 hours on the litigation over four years, and based on the rates supplied by counsel (which the Court has not reviewed and therefore does not express an opinion regarding) allege a lodestar for fees of $623,455. Doc. 188 at 21. Given the record in this case, there is no reason to believe the Plaintiffs' respective recoveries are adversely affected by the amount of fees and costs to be paid to Plaintiffs' counsel. Therefore, it is respectfully **RECOMMENDED** that the portion of the Settlement Agreement as it relates to attorney fees and costs be determined as not affecting the fairness and reasonableness of the settlement.

### III. PARTIAL SETTLEMENTS

Although a partial settlement agreement that resolves some, but not all, claims in a case is a bit unusual, it has been approved by courts in class actions to narrow claims and parties. In *Darrow v. Southdown, Inc.*, 574 F.2d 1333, 1335–36 (5th Cir. 1978), the former Fifth Circuit discussed with approval final judgments entered in a securities fraud case that approved partial settlement agreements dismissing most of the company's individual director-defendants and providing a committee to assume control of the corporation, but expressly preserving the main claims against former chairman and collaborators in the challenged transactions. *Id.*; *see In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) (describing district court's approval of partial settlement of securities fraud class action which certified the class, notice, and release of participants' claims of certain groups).

Similarly, district courts have approved partial settlement agreements in FLSA cases that streamlined the claims remaining for notice and certification in collective actions. *See Britain v. Clark Cnty., Nevada*, No. 2:12-CV-01240, 2016 WL 730725, at *1 n.1 (D. Nev. Feb. 23, 2016) (noting the parties had reached a partial settlement in FLSA collective action over unpaid overtime for training programs and only plaintiffs' lunch-break claim remained for certification); *Chase v. AIMCO Properties, L.P.*, 374 F. Supp. 2d 196, 199 (D.D.C. 2005) (approving notice in proposed collective action following settlement of FLSA claims of 190 employees and

termination of DOL's investigation, and allowing case to proceed on claims of the remaining plaintiffs for unpaid "waiting" time).

In this case, there are two components that comprise the elements of Plaintiffs' demand for unpaid overtime under the FLSA: 1) the rate of baseline pay and 2) the number of overtime hours. The parties have reached agreement on the resolution of overtime hours Plaintiffs worked within the relevant time period, and the Settlement Agreement resolves that portion of their overtime claims. Left to be resolved with finality on appeal is only the prevailing wage rate that Plaintiffs were entitled to be paid. The parties' Settlement Agreement streamlines the issues remaining in the case for appeal and does not affect the fairness or reasonableness of the settlement.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Second Renewed Motion (Doc. 212) be **GRANTED in part**; and

2.. The District Judge approve the parties' Settlement Agreement (Doc. 188-1) in conjunction with their Addendum (Doc. 212-1) as a "fair and reasonable" settlement in compliance with *Lynn's Foods,* including attorney's fees and costs of $95,000 to Plaintiffs' counsel;

3. It is further respectfully **RECOMMENDED** that the District Judge:

a. Approve as to procedure, form, and content the "Notice of Collective Action Settlement" (Doc. 212-2 at 2) and order the parties to

**REVISE** the description of the split as two-thirds (or 66.7%) for wages and one-third (or 33.3%) for liquidated damages in the Notice;

b.     Order the parties to adhere to the deadlines set forth in the Second Motion for Approval (Doc. 212) and the Settlement Agreement (Doc. 188-1).

c.     Direct the Clerk to enter final judgment in favor of Plaintiffs Jose Perez, Alfredo Santos, and Douglas Richey, on behalf of themselves and all others similarly situated, on Count I of the Complaint against Owl, Inc. in the amount of $350,000;

d.     Allow Plaintiffs to appeal the summary judgment and related rulings as to Count II of the Complaint; and

e.     Order that, in the event that the Eleventh Circuit affirms the District Judge's rulings, the settlement funds will be distributed as set forth in Plaintiffs' Second Motion For Approval of the Settlement (Doc. 212), the Settlement Agreement (Doc. 188-1), and the Addendum (Doc. 212-1) and will dismiss this case with prejudice at that time.

f.     Direct the Clerk thereafter to close the case.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's

failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection in order to expedite the final disposition of this case.**

**Recommended** in Orlando, Florida on July 18, 2022.

_____

**CELESTE F. BREMER**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
Counsel of Record